IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 23-70170 |
| | § | |
| MICHAEL KEITH CANO, | § | CHAPTER 11 |
| | § | |
| DEBTOR. | § | |

## SEER LAB, LLC'S OBJECTION TO
## DEBTOR'S DISCLOSURE STATEMENT [DOC ID. 31]

Seer Labs, LLC ("Seer"), a party in interest, files its Objection to Michael Keith Cano's Disclosure Statement (the "Disclosure Statement"), and would show the Court the following:

### Introduction

1. Seer objects to the Disclosure Statement because it does not contain adequate information and because the plan described by the Disclosure Statement is unconfirmable.

### Procedural Background

2. On August 29, 2023 (the "Petition Date"), Michael Keith Cano ("Debtor"), filed a voluntary petition (the "Bankruptcy Petition") for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), which initiated the above-referenced case (the "Bankruptcy Case").

3. On December 26, 2023, Debtor filed the Disclosure Statement, along with a proposed plan of reorganization (the "Plan"). [Doc Id. 31].

### Background Facts

4. On or about March 16, 2005, Debtor purchased real property located in Hidalgo County, as more specifically described as:

> LOT 4, THE HIGHLANDS SUBDIVISION, AN ADDITION TO THE CITY OF MISSION, HIDALGO COUNTY, TEXAS, ACCORDING TO MAP THEREOF RECORDED IN VOLUME

43, PAGE 171, MAP RECORDS OF HIDALGO COUNTY, TEXAS.

(the "Property"). The Debtor and his wife, Marina Cano ("Ms. Cano") financed such purchase through a note payable to U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust do U.S. Bank Trust National Association, as successor in interest to Valley Mortgage Company, Inc. (the "Lender") in the original principal amount of $226,860.00 (the "Note"), secured by a first lien deed of trust on the Property.

5. The Debtor defaulted on the Note and Debtor and Ms. Cano were served with a Notice of Trustee's Sale stating the note was accelerated and the Property would be posted for a nonjudicial foreclosure sale.

6. The substitute trustee foreclosed on the Property on June 7, 2022 (the "Foreclosure Sale"). Seer purchased the Property at the Foreclosure Sale for $301,500.00 and a Substitute Trustee's Deed was recorded, transferring title to the Property to Seer.[1]

7. Debtor and Ms. Cano filed suit in the 275th Judicial District for Hidalgo County, Texas, styled as *Michael Cano and Marina Cano vs. Selene Finance LP, U.S. Bank Trust National Association, and Servicelink Agency Sales and Posting, LLC* (the "Lawsuit"). After purchasing the Property at the Foreclosure Sale, Seer intervened in the Lawsuit.

---

[1] Prior to the Foreclosure Sale, the Debtor and Ms. Cano filed the following bankruptcy cases:

a. Mr. Cano filed a Chapter 13 bankruptcy case ("Bankruptcy Case No. 1"), Cause No. 19-70308, which was dismissed on November 21, 2019.

b. Mr. Cano and Ms. Cano filed a bankruptcy case under Chapter 13 ("Bankruptcy Case No. 2"), Cause No. 21-70160. Bankruptcy Case No. 2 was dismissed on March 3, 2022.

c. After the Foreclosure Sale Date, on or about November 14, 2022, Ms. Cano filed a bankruptcy case under Chapter 13 ("Bankruptcy Case No. 3"), Cause No. 22-70189. Bankruptcy Case No. 3 was dismissed on February 29, 2023. Prior to its dismissal, Seer and Ms. Cano signed an Agreed Order (the "Agreed Order") entered in Bankruptcy Case No. 3 on February 9, 2023. The Agreed Order provided that "***in rem* relief from the automatic stay applies as to the Property in any future bankruptcy cases** filed by [Ms. Cano] and any and all others acting in concert with [Ms. Cano] as it pertains to [Seer]." Emphasis added.

2

8. After the Debtor filed the Bankruptcy Case, the Lawsuit was removed on September 28, 2023 (the "Removed Case") and is pending as Cause No. 7:23-cv-00332 in the United States District Court for the Southern District of Texas, McAllen Division.

### Argument and Authority

#### A. Standard for Approval of Disclosure Statement

9. Section 1125 of the Bankruptcy Code and the interpretive case law provide the standards and parameters that govern the process of obtaining approval of a disclosure statement and solicitation of acceptance or rejection of a plan of reorganization. *See* 11 U.S.C. § 1125.

10. Courts have held that the first level of analysis in deciding whether to approve a disclosure statement under § 1125 is whether the underlying plan of reorganization can be confirmed. If the plan cannot possibly be confirmed, then the disclosure statement should not be approved. *See generally, In re Atlanta West VI Ltd. P'ship*, 91 B.R. 620, 620 (Bankr. N.D. Ga. 1988); *In re Filex, Inc.*, 116 B.R. 37, 37 (Bankr. S.D.N.Y. 1990); *In re Unichem Corp.*, 72 B.R. 95, 98 (Bankr. E.D. Pa. 1984). Approval of a disclosure statement where the plan cannot be confirmed would result in a needless waste of time and estate assets in a fruitless solicitation and confirmation process. In such a situation, the disclosure statement should not be approved in the first instance. *Unichem*, 72 B.R. at 98; *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 973 (Bankr. N.D.N.Y. 1988).

11. The second level of inquiry regarding the approval of a disclosure statement concerns the content of the disclosure statement: whether the disclosure statement contains "adequate information." "Adequate information" is defined in § 1125(a)(1) as:

> [i]nformation of a kind, and in sufficient detail, as far as is reasonable practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of

claims or interest in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, . . . .

11 U.S.C. § 1125(a)(1).

12. The essential purpose of a disclosure statement is to inform the reorganization electorate, as fully as possible, of the probable financial results of acceptance or rejection of a proposed plan. *See, e.g., In re The Stanley Hotel*, 13 B.R. 926, 926 (Bankr. D. Colo. 1981). The determination as to what is "adequate" for this essential purpose will necessarily vary from case to case and the Court can exercise significant discretion in that regard. *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1156-57 (5th Cir.), *cert. denied* 488 U.S. 926, 109 S. Ct. 311, 30 L. Ed.2d 330 (1988). However, as a general rule, a disclosure statement must clearly and succinctly inform the average creditor what distribution it is going to get, when it is going to get it, and what contingencies there are to getting it. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

13. A number of courts have provided lists of the type of information which should be included in a disclosure statement. *In re U.S. Brass Corp.*, 194 B.R. 420, 424 (Bankr. E.D. Tex. 1996), the Court listed 19 factors, including: (1) the circumstances that gave rise to the filing of the Chapter 11 case; (2) a complete description of the available assets and their value; (3) the anticipated future of the debtor; (4) the condition and performance of the debtor while in Chapter 11; (5) information regarding claims against the estate; (6) a liquidation analysis setting forth the estimated return to creditors under Chapter 7; (7) information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, or officers of the debtor; and (8) information relevant to the risks being taken by creditors. The proponent of a Chapter 11 plan also has a duty to disclose potential adversary proceedings against creditors before they vote on the plan. *In re Coastal Group, Inc.*, 13 F.3d 81, 86 (3d Cir. 1994).

14.     The principle of disclosure is "[o]f prime importance in the reorganization process." *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994). The preparation and filing of a disclosure statement is a pivotal concept and a critical step in reorganization. *Oneida Motor Freight Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988). Given the reliance placed upon the disclosure statement by creditors and the court, "the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information' cannot be overstated." *Id*.

### B.     The Proposed Plan is not Confirmable

15.     The Plan, as described in the Disclosure Statement, contains several inaccuracies. First, the Plan and Disclosure Statement each ignore that the Foreclosure Sale occurred prior to the Petition Date, and further ignore that title to the Property transferred to Seer on June 7, 2022. Seer is listed as a secured creditor, with a lien on the Property. As set forth above, Seer paid $301,500.00 to purchase the Property at the Foreclosure Sale. As a purchaser of the Property at the Foreclosure Sale, Seer is not a creditor of the Debtor and does not have a secured lien on the Property; Seer is title owner of the Property pursuant to the Substitute Trustee's Deed.

16.     In Section 6 of the Plan, Seer is listed as an "unimpaired" secured creditor, with a claim in the amount of $25,000.00. The Debtor proposes to pay Seer within three months of confirmation of the Plan. The Debtor also lists the Lender as an unimpaired secured creditor and proposes to pay the Lender the sum of $305,000.00 within three months of confirmation. As shown above, the Lender's lien was foreclosed on June 7, 2022, and the proceeds of the Foreclosure Sale, paid by Seer, went to the Lender.

17.     The Debtor's classification of Seer and the Lender as "unimpaired" secured creditors is an improper attempt to gerrymander voting. Again, Seer paid $301,500.00 to purchase the Property at the Foreclosure Sale and the Debtor proposes to pay Seer the paltry sum of

$25,000.00. The Plan's proposed modification of Seer's rights in the Property from title owner to unimpaired secured creditor is impermissible under § 1124.

18. Lastly, the Plan does not provide for payment of prepetition taxes owed on the Property. In addition to living rent free at the Property since the June 7, 2022 Foreclosure Sale, the Debtor has failed to pay ad valorem taxes. Specifically, according to the records of the Hidalgo County Tax Assessor, the sum of $25,025.06 is currently outstanding, with penalties and interest continuing to accrue.

### C. Objections to Disclosure Statement

#### i. The Disclosure Statement does not Provide Adequate Information about the Debtor's Proposed Benefactor

19. The Plan relies on a gift of $330,000.00 from a third party named Rene Garza. Because the Plan relies almost entirely on Mr. Garza for funding, it is imperative that the Disclosure Statement provide adequate information about Mr. Garza and his financial capabilities. The Disclosure Statement gives no information whatsoever about Mr. Garza. The reader is simply left to speculate.

20. The case of *In re Forest Grove*, LLC, 448 B.R. 729 (Bankr. D. S.C. 2011) is illustrative as to a speculative plan that relies on third party contributions as a source of funding. There, the court held that "[b]ecause the success of Debtor's chapter 11 case is clearly contingent on . . . personal contributions, in order to provide adequate information, Debtor must disclose information regarding [the contributor's] financial situation that shows his ability to make such contributions." *Id*. (citing *In re Repurchase Corp.*, 332 B.R. 336, 343 (Bankr. N.D. Ill. 2005) for the holding that a debtor company's president's declaration that his wife would contribute necessary capital was "sheer speculation and wishful thinking" that, without corroboration or a contract, did not satisfy the feasibility requirement of plan confirmation and *In re Wiston XXIV,*

6

*Ltd. P'ship*, 153 B.R. 322, 327-28 (Bankr. D. Kan. 1993) for the holding that a plan was not feasible despite a general partner's promise to contribute money because the general partner provided no proof he could make the payment).

21. Like the source of funding in *Forest Grove* and the cases cited therein, we have no information in the Disclosure Statement about Mr. Garza's financial wherewithal. Further, as would have been required of the third party in *Forest Grove* and the cases cited therein, because this Plan is contingent on personal contributions and financing from third-parties not committed to the Debtor's future, creditors in this case need information regarding Mr. Garza's financial situation and the financial arrangements whereby he will have the financial resources available and at his disposal that shows his ability to make the necessary contributions to Debtor's plan.

22. Finally, the Disclosure Statement does not explain why Mr. Garza will have the willingness or the ability to gift the Debtor $330,000.00 upon confirmation, when he did not have the willingness or the ability to pay that same amount to keep Debtor out of bankruptcy. Without specific information as to how Mr. Garza will obtain the funds to contribute, a detail of Mr. Garza's assets and liabilities and other relevant information regarding his financial situation, the Court should deny approval of the Disclosure Statement.

**ii.     The Disclosure Statement does not Provide Adequate Information about the Debtor or his Assets**

23. The Disclosure Statement is devoid of any explanation of what changes the Debtor has implemented or what expenses have been reduced that would support the Debtor's assertion that it will be able to generate sufficient funds to make the remaining payments under the Plan.

24. The Plan projects that the Debtor will earn $100,000.00 per year throughout the life of the Plan. The Disclosure Statement provides that the Debtor will increase his income by working longer than normal hours. The operating reports filed to date (collectively the "MOR's"),

as well as the Disclosure Statement's report of income in prior years call into question the feasibility of the anticipated increase. Since the Petition Date, the Debtor's reported income does not show the ability to pay the projected monthly expenditures in months 1-12. Specifically, the MOR's show the following:

> August 2023 MOR- Income $0.00, expenses of $521 (as amended);
>
> September 2023 MOR- Income $10,283.00, less payroll deductions of $1,913.00 and expenses of $4,636.00;
>
> October 2023 MOR- Income $6,828.00, less payroll deductions of $1,289.00 and expenses of $8,940.00; and
>
> November 2023 MOR- Income $8,003.00, less payroll deductions of $1,585.00 and expenses of $7,226.00.

As of February 3, 2024, the Debtor has not filed a December 2023 MOR with the Court.

25. There is no indication that the Debtor can meet his projected expenses proposed in the Plan. And the means of implementation set out by the Debtor are so vague as to be non-existent. Specifically, the Debtor does not state how many hours he worked to earn the income reflected in the MOR's and does not state how many additional hours he would need to work to meet his forecasted income or when he will begin making such an endeavor. Further, the Disclosure Statement states that the Debtor will not attempt to reduce monthly expenses.

26. The Debtor's description of assets does not provide a meaningful analysis, beyond what could already be gleaned by combing through the Debtor's schedules and MOR's filed to date. The Debtor lists the Property as an asset, which Seer denies is property of the Estate and lists as its basis for the valuation the Hidalgo County Appraisal District valuation. Additionally, the Debtor does not provide the basis for his valuation of personal property.

27. The Debtor further lists his "best estimate" in valuing two pending lawsuits, without analysis of the basis for such valuations or the likelihood of ultimate success and collectability. The Debtor lists a lawsuit against "Aviana Healthcare; title company, and Michael Palomo," valued at $2,000,000. Michael Palomo ("Mr. Palomo") is the sole Member of Seer and is not involved in any lawsuit with Aviana Healthcare or a title company.

28. A second lawsuit, the Removed Case, is listed against "Selene Finance, LP and U.S. Bank Trust National Association, *et al*," which the Debtor values at $50,000. Seer is involved as intervenor in the Removed Case. In the Removed Case, there are no causes of action asserted by the Debtor against Mr. Palomo, individually. As such, it is unclear in which of the two lawsuits the Debtor asserts he has a claim against Mr. Palomo.

29. Lastly, the Disclosure Statement contains no meaningful liquidation analysis. A chart simply recites the Debtor's opinion as to the value of its assets.

WHEREFORE, Seer respectfully requests that its objections to Debtor's Disclosure Statement be sustained and that the Court refuse to allow Debtor to submit the proposed Plan of Reorganization for voting. Alternatively, Seer requests that the Court order Debtor to amend or supplement the Disclosure Statement to cure each of Seer's objections. .

Dated:  February 3, 2024.

        Respectfully submitted,

        **Laguna Law, PLLC**
        **1305 E. Nolana Ave.**
        **Ste. F**
        **McAllen, Texas 78504**


        /s/ Jeana Laguna
        Jeana Laguna
        State Bar No.: 24074611
        Southern District No. 1129085
        (956) 605-1581
        jeana@laguna-law.com

        **Attorney for Seer Labs, LLC**

**Certificate of Service**

      I certify that a true and correct copy of the foregoing document was forwarded to the following persons, as well as those persons required to receive notice of the relief requested and/or who have requested to be served by any applicable Bankruptcy Rule, by the Court's CM/ECF Noticing System, by first class mail, postage prepaid, and/or electronic transmission on February 3, 2024:

Michael Keith Cano
2006 Dorado Diver
Mission, Texas 78573

Antonio Martinez, Jr.
Law Offices of Antonio Martinez, Jr., PC
317 W. Nolana Avenue, Suite C
McAllen, Texas 78504

Jeremy Shane Flannery
615 E. Houston Street, Suite 533
San Antonio, Texas 78205

Andrew Jimenez
United States Trustee
515 Rusk Street, Suite 3516
Houston, Texas 77002

                                              */s/ Jeana Laguna*
                                               Jeana Laguna