IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 23-70170 |
| | § | |
| MICHAEL KEITH CANO, | § | CHAPTER 11 |
| | § | |
| DEBTOR. | § | |

**SEER LAB, LLC'S OBJECTION TO**
**DEBTOR'S AMENDED DISCLOSURE STATEMENT [DOC ID. 55]**

Seer Labs, LLC ("Seer"), a party in interest, files its Objection to Michael Keith Cano's Amended Disclosure Statement (the "Amended Disclosure Statement"), and would show the Court the following:

**Introduction**

1.  Seer objects to the Amended Disclosure Statement because it does not contain adequate information and because the plan described by the Amended Disclosure Statement is unconfirmable.

**Procedural Background**

2.  On August 29, 2023 (the "Petition Date"), Michael Keith Cano ("Debtor"), filed a voluntary petition (the "Bankruptcy Petition") for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), which initiated the above-referenced case (the "Bankruptcy Case").

3.  On December 26, 2023, Debtor filed his original disclosure statement, along with a proposed plan of reorganization (the "Original Disclosure Statement"). [Doc Id. 31]. After hearing on the Original Disclosure Statement, the Court noted numerous deficiencies and ordered

that the Debtor file an amended disclosure statement on or before March 7, 2024. On March 28, 2024, the Debtor late filed the Amended Disclosure Statement.[1]

## Background Facts

4. On or about March 16, 2005, Debtor purchased real property located in Hidalgo County, as more specifically described as:

> LOT 4, THE HIGHLANDS SUBDIVISION, AN ADDITION TO THE CITY OF MISSION, HIDALGO COUNTY, TEXAS, ACCORDING TO MAP THEREOF RECORDED IN VOLUME 43, PAGE 171, MAP RECORDS OF HIDALGO COUNTY, TEXAS.

(the "Property"). The Debtor and his wife, Marina Cano ("Ms. Cano") financed such purchase through a note payable to U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust do U.S. Bank Trust National Association, as successor in interest to Valley Mortgage Company, Inc. (the "Lender") in the original principal amount of $226,860.00 (the "Note"), secured by a first lien deed of trust on the Property.

5. The Debtor defaulted on the Note and Debtor and Ms. Cano were served with a Notice of Trustee's Sale stating the note was accelerated and the Property would be posted for a nonjudicial foreclosure sale.

---

[1] The Amended Disclosure Statement was not timely filed, and a show cause hearing was held on March 29, 2024. At the show cause hearing, counsel for Debtor represented to the Court that the reason Debtor was unable to timely file the Amended Disclosure Statement was because counsel was unable to obtain documents filed in the Lawsuit, as defined in Paragraph 7, herein.

However, well before the Amened Disclosure Statement was due and in connection with the hearing on the Original Disclosure Statement, the Debtor filed a witness and exhibit list containing all documents filed in the Lawsuit. See Doc. 40, Exhibit 5.

6. The substitute trustee foreclosed on the Property on June 7, 2022 (the "Foreclosure Sale"). Seer purchased the Property at the Foreclosure Sale for $301,500.00 and a Substitute Trustee's Deed was recorded, transferring title to the Property to Seer.[2]

7. Debtor and Ms. Cano filed suit in the 275th Judicial District for Hidalgo County, Texas, styled as *Michael Cano and Marina Cano vs. Selene Finance LP, U.S. Bank Trust National Association, and Servicelink Agency Sales and Posting, LLC* (the "Lawsuit"). After purchasing the Property at the Foreclosure Sale, Seer intervened in the Lawsuit.

8. After the Debtor filed the Bankruptcy Case, the Lawsuit was removed on September 28, 2023 (the "Removed Case") and is pending as Cause No. 7:23-cv-00332 in the United States District Court for the Southern District of Texas, McAllen Division.

## Argument and Authority

### A. Standard for Approval of Disclosure Statement

9. Section 1125 of the Bankruptcy Code and the interpretive case law provide the standards and parameters that govern the process of obtaining approval of a disclosure statement and solicitation of acceptance or rejection of a plan of reorganization. *See* 11 U.S.C. § 1125.

---

[2] Prior to the Foreclosure Sale, the Debtor and his wife, Ms. Cano filed the following bankruptcy cases:

a. Mr. Cano filed a Chapter 13 bankruptcy case ("Bankruptcy Case No. 1"), Cause No. 19-70308, which was dismissed on November 21, 2019.

b. Mr. Cano and Ms. Cano filed a bankruptcy case under Chapter 13 ("Bankruptcy Case No. 2"), Cause No. 21-70160. Bankruptcy Case No. 2 was dismissed on March 3, 2022.

c. After the Foreclosure Sale Date, on or about November 14, 2022, Ms. Cano filed a bankruptcy case under Chapter 13 ("Bankruptcy Case No. 3"), Cause No. 22-70189. Bankruptcy Case No. 3 was dismissed on February 29, 2023. Prior to its dismissal, Seer and Ms. Cano signed an Agreed Order (the "Agreed Order") entered in Bankruptcy Case No. 3 on February 9, 2023. The Agreed Order provided that "***in rem* relief from the automatic stay applies as to the Property in any future bankruptcy cases** filed by [Ms. Cano] and any and all others acting in concert with [Ms. Cano] as it pertains to [Seer]." Emphasis added.

3

10. Courts have held that the first level of analysis in deciding whether to approve a disclosure statement under § 1125 is whether the underlying plan of reorganization can be confirmed. If the plan cannot possibly be confirmed, then the disclosure statement should not be approved. *See generally, In re Atlanta West VI Ltd. P'ship*, 91 B.R. 620, 620 (Bankr. N.D. Ga. 1988); *In re Filex, Inc.*, 116 B.R. 37, 37 (Bankr. S.D.N.Y. 1990); *In re Unichem Corp.*, 72 B.R. 95, 98 (Bankr. E.D. Pa. 1984). Approval of a disclosure statement where the plan cannot be confirmed would result in a needless waste of time and estate assets in a fruitless solicitation and confirmation process. In such a situation, the disclosure statement should not be approved in the first instance. *Unichem*, 72 B.R. at 98; *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 973 (Bankr. N.D.N.Y. 1988).

11. The second level of inquiry regarding the approval of a disclosure statement concerns the content of the disclosure statement: whether the disclosure statement contains "adequate information." "Adequate information" is defined in § 1125(a)(1) as:

> [i]nformation of a kind, and in sufficient detail, as far as is reasonable practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interest in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, . . . .

11 U.S.C. § 1125(a)(1).

12. The essential purpose of a disclosure statement is to inform the reorganization electorate, as fully as possible, of the probable financial results of acceptance or rejection of a proposed plan. *See, e.g., In re The Stanley Hotel*, 13 B.R. 926, 926 (Bankr. D. Colo. 1981). The determination as to what is "adequate" for this essential purpose will necessarily vary from case to case and the Court can exercise significant discretion in that regard. *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1156-57 (5th Cir.), *cert. denied* 488 U.S. 926, 109 S. Ct. 311, 30 L. Ed.2d 330

(1988). However, as a general rule, a disclosure statement must clearly and succinctly inform the average creditor what distribution it is going to get, when it is going to get it, and what contingencies there are to getting it. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

13. A number of courts have provided lists of the type of information which should be included in a disclosure statement. *In re U.S. Brass Corp.*, 194 B.R. 420, 424 (Bankr. E.D. Tex. 1996), the Court listed 19 factors, including: (1) the circumstances that gave rise to the filing of the Chapter 11 case; (2) a complete description of the available assets and their value; (3) the anticipated future of the debtor; (4) the condition and performance of the debtor while in Chapter 11; (5) information regarding claims against the estate; (6) a liquidation analysis setting forth the estimated return to creditors under Chapter 7; (7) information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, or officers of the debtor; and (8) information relevant to the risks being taken by creditors. The proponent of a Chapter 11 plan also has a duty to disclose potential adversary proceedings against creditors before they vote on the plan. *In re Coastal Group, Inc.*, 13 F.3d 81, 86 (3d Cir. 1994).

14. The principle of disclosure is "[o]f prime importance in the reorganization process." *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994). The preparation and filing of a disclosure statement is a pivotal concept and a critical step in reorganization. *Oneida Motor Freight Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988). Given the reliance placed upon the disclosure statement by creditors and the court, "the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information' cannot be overstated." *Id*.

### B. The Proposed Plan is not Confirmable

15. The Plan, as described in the Amended Disclosure Statement, is not confirmable. It improperly classifies Seer as "unimpaired," but also alters Seer's rights with respect to the Property. Under 11 U.S.C. § 1124, a class of claims or interests ***is impaired under a plan*** unless,

with respect to each claim or interest of such class, the plan—***leaves unaltered the legal, equitable, and contractual rights*** to which such claim or interest entitles the holder of such claim or interest. . . ."

16. In Section 6, Seer is classified as a secured unimpaired creditor, with a lien on the Property. The Plan provides unimpaired creditors "will be paid in accordance with the pre-petition contract that governs the claim." Although the Debtor classifies Seer as "unimpaired," Seer has no pre-petition contract with the Debtor. As set forth above, Seer paid $301,500.00 to purchase the Property at the Foreclosure Sale. As a purchaser of the Property at the Foreclosure Sale, Seer is not a creditor of the Debtor and does not have a secured lien on the Property.

17. The Debtor proposes to pay Seer only the $301,500.00 it expended to purchase the Property at the Foreclosure Sale. In couching Seer as an unimpaired secured creditor, the Debtor is attempting to force Seer to sell back the Property for the exact amount it spent. Seer purchased the Property two years ago and has incurred attorney's fees related to its attempts to obtain possession. Additionally, ***if Seer were a secured creditor***, as Debtor asserts, interest would have accrued on the purchase price over the two-year period.

18. The Debtor's classification of Seer as an "unimpaired" secured creditor is an improper attempt to prevent Seer from being able to vote against the Plan because, if the Court accepts the Debtor's artificial classification, Seers will be "conclusively presumed to have accepted" the Plan under § 1126(f).

### C. Objections to Amended Disclosure Statement

19. The Amended Disclosure Statement contains several inaccuracies. First, as already addressed above it ignores that title to the Property transferred to Seer prior to the Petition Date.

20. A far as the factors set forth in *U.S. Brass Corp.*, the Amended Disclosure Statement fails to accurately or adequately describe: (1) the circumstances that gave rise to the

filing of the Chapter 11 case; (2) a complete description of the available assets and their value; (3) the anticipated future of the debtor; (4) the condition and performance of the debtor while in Chapter 11; and (5) a liquidation analysis setting forth the estimated return to creditors under Chapter 7.

21. The Debtor states that the event that led to the filing of the Bankruptcy Case was a work-related incident that occurred in December of 2019. The incident resulted in a lawsuit filed in 2020 against the Debtor's prior employer. The Debtor states that after the incident, he experienced severe medical problems, which caused him to be unable to work. Yet in 2020, the year after the incident, the Debtor earned $83,474.00, almost as much as he earned in 2023. The Debtor's reason given also ignores that this is the fourth bankruptcy filed by the Debtor and/or his wife, Ms. Cano since 2019.

22. As for the anticipated future of the Debtor and his performance while in Chapter 11, the Plan relies on a gift of $330,000.00 from a third party named Rene Garza. In addition to this gift, both the Original Disclosure Statement and the Amended Disclosure Statement provide that the Debtor will generate sufficient funds to make the remaining payments under the Plan by: (1) increasing his income to $100,000 per annum by working additional hours and (2) reducing expenses to $3,000.00 to $3,400.00 per month by refraining from eating out and focusing on paying basic necessities.

23. The operating reports filed to date (collectively the "MOR's"), as well as the Disclosure Statement's report of income in prior years call into question the Debtor's ability (or willingness) to increase his income or reduce his expenses. Specifically, the MOR's show the following:

August 2023 MOR- Income $0.00, expenses of $521 (as amended);

September 2023 MOR- Income $10,283.00, less payroll deductions of $1,913.00 and expenses of $4,636.00;

October 2023 MOR- Income $6,828.00, less payroll deductions of $1,289.00 and expenses of $8,940.00;

November 2023 MOR- Income $8,003.00, less payroll deductions of $1,585.00 and expenses of $7,226.00;

December 2023 MOR- Income $5,996.00, less payroll deductions of $1,090.00 and expenses of $7,959.00;

January 2024 MOR- Income $7,346.00, less payroll deductions of $1,555.00 and expenses of $7,728.00;

February 2024 MOR- Income $7,219.00, less payroll deductions of $1,507.00 and expenses of $7,073.00; and

March 2024 MOR- Income $10,182.00, less payroll deductions of $2,075.00 and expenses of $8,041.00.

24. Since filing the Original Disclosure State and the Amended Disclosure Statement, there is no indication that the Debtor has taken the necessary steps to increase his income or reduce his nonessential expenses to meet his projected expenses proposed in the Plan. Specifically, the notes attached to the January 2024 MOR states that the Debtor "needs to cut expenses to meet plan objectives." The January 2024 bank statement shows a total of 12 withdrawals from the DIP account for restaurants and 9 withdrawals at a liquor store called Feldman's. The notes attached to the February MOR again state that the Debtor "needs to cut expenses to meet plan objectives." The February 2024 bank statement shows a total of 11 withdrawals from the DIP account for restaurants and 9 withdrawals at a liquor store called Feldman's.

25. The notes attached to the March 2024 MOR state that the ***Debtor had cut expenditures*** to meet Plan objectives, but the expenses for March of 2024 were the highest since the Petition Date. And the March 2024 bank statement shows a total of 16 withdrawals from the DIP account for restaurants and 10 withdrawals at liquor stores such as Feldman's and Specs.

26. Next, the Debtor's description of assets does not provide a meaningful analysis, beyond what could already be gleaned by combing through the Debtor's schedules and MOR's filed to date. The Debtor lists the Property as an asset, which Seer denies is property of the Estate and lists as its basis for the valuation the Hidalgo County Appraisal District valuation.

27. The Debtor further lists his "best estimate" in valuing two pending lawsuits, without analysis of the basis for such valuations or the likelihood of ultimate success and collectability. The Debtor lists a lawsuit against "Aveeana Healthcare and values that asset at $2,000,000 based on the Debtor's "best estimate." Although the Debtor states in the Amended Disclosure Statement that the Aveeana Lawsuit has been authorized by the Court to proceed, a review of the docket sheet shows that the Debtor is not actively prosecuting his claims in that case.

28. A second lawsuit, the Removed Case, is listed against "Selene Finance, LP and U.S. Bank Trust National Association, *et al,*" which the Debtor values at $50,000. Seer is involved as intervenor in the Removed Case. In the Removed Case, there are no causes of action asserted in the live pleadings against Seer, other than a trespass to try title claim related to the Property.

29. Lastly, the Disclosure Statement contains no meaningful liquidation analysis. A chart simply recites the Debtor's opinion as to the value of his assets.

WHEREFORE, Seer respectfully requests that its objections to Debtor's Disclosure Statement be sustained and that the Court refuse to allow Debtor to submit the proposed Plan of Reorganization for voting.

Dated:  April 26, 2024.

        Respectfully submitted,

        **Laguna Law, PLLC**
        **1305 E. Nolana Ave.**
        **Ste. F**
        **McAllen, Texas 78504**

        /s/ Jeana Laguna
        Jeana Laguna
        State Bar No.: 24074611
        Southern District No. 1129085
        (956) 605-1581
        jeana@laguna-law.com

        **Attorney for Seer Labs, LLC**

**Certificate of Service**

      I certify that a true and correct copy of the foregoing document was forwarded to the following persons, as well as those persons required to receive notice of the relief requested and/or who have requested to be served by any applicable Bankruptcy Rule, by the Court's CM/ECF Noticing System, by first class mail, postage prepaid, and/or electronic transmission on April 26, 2024:

Michael Keith Cano
2006 Dorado Drive
Mission, Texas 78573

Antonio Martinez, Jr.
Law Offices of Antonio Martinez, Jr., PC
317 W. Nolana Avenue, Suite C
McAllen, Texas 78504

Jeremy Shane Flannery
615 E. Houston Street, Suite 533
San Antonio, Texas 78205

Andrew Jimenez
United States Trustee
515 Rusk Street, Suite 3516
Houston, Texas 77002

ACAR Leasing Ltd. d/b/a GM Financial Leasing
P O Box 183853
Arlington, TX 76096

Conn Appliances, Inc.
c/o Becket and Lee LLP
PO Box 3002
Malvern, PA 19355-0702

                                                    */s/ Jeana Laguna*
                                                     Jeana Laguna